1  **A. Alexander Gorman, Esq. (SBN 158719)**
   **GORMAN LAW OFFICE, LTD**
2  **Pavilions Professional Center**
   **Suite 200, 641 Fulton Avenue**
3  **Sacramento, California 95825**
   **Telephone: (916) 448-1405**
4  **Alex@Gorman.Law**
5
6  **Attorneys for Plaintiff**
   **BRIAN R. DECKER**
7
                    **UNITED STATES DISTRICT COURT**
8
                    **EASTERN DISTRICT OF CALIFORNIA**
9

| 10 | **BRIAN R. DECKER, an Individual,** | **Case No.  2:24-cv-00021-DJC-AC** |
|---|---|---|
| 11 | **Plaintiff.** | **SECOND AMENDED COMPLAINT FOR** |
| 12 | **v.** | **DAMAGES FOR:** |

**v.**

**COUNTY OF SACRAMENTO, a**
**Municipal Corporation; SACRAMENTO**
**COUNTY SHERIFF'S OFFICE, SCOTT R.**
**JONES, in his official capacity as**
**Sacramento County Sheriff;**
**SACRAMENTO MUNICIPAL UTILITY**
**DISTRICT, a Municipal Utility District;**
**ROBERT DUGGAN, in his official**
**capacity as an employee of SMUD;**
**CITY OF RANCHO CORDOVA, a**
**Municipal Corporation; CITY OF**
**RANCHO CORDOVA POLICE**
**DEPARTMENT, BRANDON M. LUKE in**
**his official capacity as Chief of Police**
**for the Rancho Cordova Police**
**Department; GEORGE PARSONS, in his**
**official capacity as a Sacramento**
**County Sheriff's Deputy and/or a**
**Rancho Cordova Police Officer; JEFF**
**COUCH, in his official capacity as a**
**Sacramento County Sheriff's Deputy**
**and/or a Rancho Cordova Police**
**Sergeant; and DOES 1 TO 50, inclusive.**

**Defendants.**

**SECOND AMENDED COMPLAINT FOR**
**DAMAGES FOR:**

1. **False Arrest;**
2. **Invasion of Privacy (Intrusion into Private Affairs);**
3. **Invasion of Privacy (False Light);**
4. **Trespass;**
5. **Abuse of Process;**
6. **Violations of the Tom Bane Civil Rights Act [Cal. Civ. Code § 52.1 & 52.3];**
7. **Negligence; and**

**DEMAND FOR JURY TRIAL**

**COMPLAINT FOR DAMAGES OF BRIAN R. DECKER**

COMES NOW, Plaintiff BRIAN R. DECKER, by and through his counsel of record, and alleges as follows:

**JURISDICTION AND VENUE**

1.    When this matter was removed to federal court, this Court had subject-matter jurisdiction over Plaintiffs' claims under *28 U.S.C. §§ 1331* and *1367*, and venue was appropriate under *28 U.S.C. § 1446(a)* because the Superior Court of Sacramento County is located in the Eastern District of California.

2.    The Superior Court of Sacramento County also has jurisdiction over Plaintiffs' claims under *California Code of Civil Procedure §410.10*, California *Government Code § 900, et seq.*, and *California Civil Code §52*. Venue is proper in the Superior Court of Sacramento County pursuant to *California Code of Civil Procedure §§ 393(b), 394(a)*, and *395(a)* because Defendants are located in Sacramento County and their actions giving rise to Plaintiffs' claims occurred in Sacramento County.

**PARTIES**

3.    At all times mentioned herein, Plaintiff BRIAN R. DECKER was and is an individual residing in Sacramento County, California.

4.    At all times mentioned herein and upon information and belief, Defendant COUNTY OF SACRAMENTO (hereafter "COUNTY") was and is a Municipal Corporation located in Sacramento County, California.

5.    At all times mentioned herein and upon information and belief, Defendant SCOTT R. JONES (hereafter "SHERIFF JONES") was the elected Sheriff for Sacramento County, is made a party to this Action in his individual and official capacity and was and is an individual residing in California.

6.     At all times mentioned herein and upon information and belief, Defendant GEORGE PARSONS, is made a party to this Action in his individual and official capacity, was and is an individual residing in California, and is an employee in the position of Deputy Sheriff for the Sacramento County Sheriff's Office and Defendant COUNTY or alternatively as a Police Officer for Defendant CITY OF RANCHO CORDOVA and City of Rancho Cordova Police Department.

7.     Moreover, at all times mentioned herein, the Sacramento County Sheriff's Office was and is a political subdivision of Defendant COUNTY OF SACRAMENTO.

8.     At all times mentioned herein and upon information and belief, Defendant JEFF COUCH, is made a party to this Action in his individual and official capacity, was and is an individual residing in California, and is an employee in the position of Deputy Sheriff for the Sacramento County Sheriff's Office and Defendant COUNTY or alternatively as a Police Sergeant for Defendant CITY OF RANCHO CORDOVA and City of Rancho Cordova Police Department.

9.     At all times mentioned herein and upon information and belief, Defendant SACRAMENTO MUNICIPAL UTILITY DISTRICT (hereafter "SMUD") was and is a Municipal Utility District created pursuant to *California Public Utility Code §11501*, *et seq*. located in Sacramento County, California.

10.     At all times mentioned herein and upon information and belief, Defendant ROBERT DUGGAN, is made a party to this Action in his individual and official capacity, was and is an individual residing in California, and is an employee of Defendant SMUD.

11.     At all times mentioned herein and upon information and belief, Defendant CITY OF RANCHO CORDOVA (hereafter "RANCHO CORDOVA") was and is a Municipal Corporation located in Sacramento County, California.

12.     At all times mentioned herein and upon information and belief, the City of Rancho Cordova Police Department was and is a subdivision of Defendant CITY OF RANCHO CORDOVA.

13.     At all times mentioned herein and upon information and belief, Defendant BRANDON M. LUKE (hereafter "LUKE") was and is an employee of the Sacramento County Sheriff's Office and Defendant COUNTY, is made a party to this Action in his individual and official capacity and was and is an individual residing in California.

14.     At all times mentioned herein and upon information and belief, Defendant CITY OF RANCHO CORDOVA contracted out their police services to Defendant COUNTY OF SACRAMENTO and the Sacramento County Sheriff's Office.

15.     Furthermore, Plaintiff is informed and believes and thereupon alleges, that at all times mentioned herein, that each of said Defendants, including the DOE Defendants, are jointly and severally liable as the principal, officer, agent, master, servant, employer, employee and partner of each of the remaining Defendants and was in doing the acts complained of herein, acting within the scope of his, her or its said agency, employment or partnership. Furthermore, each Defendant is responsible for the acts of the other Defendants and its/their own respective employees under the theory of *Respondeat Superior* and pursuant to *Cal Gov Code § 815.2*. Moreover, certain Defendants are sued herein as DOE Cross-Defendants because their identities are not yet known. If and when such identities become known, Plaintiff will name any such Defendants in the place and staid of DOE Defendants.

16.     Plaintiff is required to comply with the government claims statute, and have complied with applicable claims statutes as to all Defendants.

1

**GENERAL ALLEGATIONS**

2    17.    On or about October 23, 2020, at approximately 7 am, Plaintiff BRIAN R.

3
DECKER was sleeping peacefully in his home when he heard police bullhorns
4
screaming for him by name to come out immediately with his hands up. Looking out he
5
saw multiple patrol cars and multiple officers and deputies with guns drawn and pointed
6
at his house. Shocked, traumatized, and with no chance to put on clothes, he was
7
forced to walk backwards out of his home in only his underwear at gunpoint with sirens
8
blaring and screaming commands over the bullhorn, humiliated in front of his neighbors.
9

10    18.    In fact, one of Plaintiff DECKER's neighbors, Michael Growney, recorded a

11
video of the entire event on his cellphone and posted it on his YouTube account that
12
same day. On the video, one of the neighbors is heard saying of his fairly new neighbor
13
Plaintiff DECKER walking backward in his underwear, "I figured they were doing
14
something." As of this writing, there have been 483 public views of this video of Plaintiff
15
DECKER's humiliating experience.
16

17    19.    Immediately and without an arrest warrant, he was handcuffed and placed

18
in the back of a patrol car for two hours while the officers and deputies of the various
19
Defendants ransacked and damaged his home. Eventually the police discontinued their
20
futile search asking Plaintiff DECKER "where are all the pot plants and what are all
21
these doing in your home while showing him the pictures of his computer towers?"
22
Plaintiff responded that he didn't know what pot plants they were talking about and that
23
the computer towers were for his Bitcoin mining business.
24

25    **STATEMENT OF FACTS**

26
**Application and Installation of Solar System with Defendant SMUD.**
27

28    20.    Plaintiff DECKER at all relevant times was and is an employee of a

---

residential solar power system company. He also operates a Bitcoin mining business that requires extensive computer systems that draw a relatively large amount of electrical power. Plaintiff DECKER chose to install a large solar power system in his new home to help offset the costs of his Bitcoin mining operation.

21.    Residential solar power systems typically power a home for approximately 12 hours out of each 24 hour cycle because they draw their power while the sun is out. During the other 12 hours, the home is on the electrical grid power provided and sold by Defendant SMUD. Defendant SMUD therefore strictly regulates and approves through its permitting process the installation of solar power systems within its utility district. Plaintiff DECKER's home was no exception.

22.    On or about November 19, 2019, Plaintiff DECKER and/or his contractor Green Day Power Solar & Roofing (hereafter "Green Day Power") submitted his solar project plan (Project Reference: DG-42214) to the SMUD Solar Team aka SMUD Customer Interconnection Team at email address solar.PV@SMUD.org.

23.    On Tue, Nov 19, 2019 at 2:13 PM both Plaintiff DECKER's email and the operations@greendaypower.com email simultaneously received an email from the SMUD Solar Team <solarpv@smud.org> entitled "SMUD Interconnection Application Received - Project #DG-42214" (*Please see a copy of said email attached hereto as EXHIBIT C*).

24.    On that same day November 19, 2019, Emily Jackson at Green Day Power received a voicemail from Jose at the "SMUD Interconnection group" asking for a return call regarding more information regarding the project, specifically asking her to "*provide a bit more insight because the [intended] usage is astronomical and the system size being requested is frankly, [pause] quite large [pause] for such a small home …*".

25.    Later that same day, Green Day Power Account Manager Jenna Mellon forwarded the voicemail file to Plaintiff DECKER with the message "[t]his is from SMUD please call Jose back and explain your usage." (*Please see a copy of said forwarded message attached hereto as EXHIBIT D*).

26.    On November 20, 2019, Plaintiff DECKER responded to Ms. Mellon and Ms. Jackson replying "I called and spoke to Jose. All is good." In fact, Plaintiff DECKER called Jose at SMUD Solar and informed him that he needed the large system size and intended large capacity future usage because he would be running a number of Bitcoin mining computer towers for his business that would draw larger than usual amounts of power from the grid. Ms. Mellon acknowledged Plaintiff DECKER's message to her on November 22, 2019. (*Please see a copy of said forwarded messages attached hereto together as EXHIBIT E*).

27.    Furthermore on Wed, Nov 20, 2019 at 9:43 AM, both the operations@greendaypower.com and Plaintiff DECKER's email simultaneously received an email from SMUD Solar Team <solarpv@smud.org> entitled "SMUD Interconnection Application Initial Review Complete - Project #DG-42214" stating in pertinent part:

> *Your project was submitted on 11/19/2019. Your application is accurate and complete. Your project will now go through a technical review in compliance with our Distributed Generation Engineering Specifications and our Interconnection Guidelines.*

…

(*Please see a copy of said email attached hereto as EXHIBIT F*).

28.    Thereafter, on Wed, Nov 27, 2019 at 8:42 AM, both Plaintiff DECKER's email and the operations@greendaypower.com email simultaneously received an email from SMUD Solar Team <solarpv@smud.org> entitled "SMUD Interconnection

Application - Approval to Build -" congratulating them because SMUD had approved the interconnection technical drawings. This email was signed by the SMUD GA Sign Design Interconnection Team and invited replies to GAInterconnection@smud.org. (*Please see a copy of said email attached hereto as EXHIBIT G*).

29.    Thereafter, on Mon, Dec 16, 2019, 6:45 AM, both Plaintiff DECKER's email and the operations@greendaypower.com email simultaneously received an email from SMUD Solar Team <solarpv@smud.org> entitled "SMUD Interconnection Application - Approval to Build -" stating:

> *The interconnection application for the above referenced project has been reviewed and approved by SMUD. This review and approval of the electrical drawing(s) is for SMUD requirements only and does not alleviate the host customer, system owner or contractor from meeting all appropriate NEC, local building and fire codes now or in the future.*
>
> *Calling in Hangouts will be turned off soon. You can keep*
>
> *Your next contact from SMUD will be upon receipt of the final sign off from the Authority Having Jurisdiction (AHJ). At that time SMUD will schedule a SMUD technician to inspect and install the PV meter. To assure a timely PV meter inspection and install is scheduled, it is the contractor's responsibility to ensure that the AHJ has submitted the final approval to SMUD's Inspection Desk.*
>
> *In the event your project requires a main breaker change or a panel upgrade/relocation, please contact SMUD customer service at 1-888-742-7683, Monday - Friday, 7:00AM to 7:00PM.*
>
> *Thank you for your application.*
>
> *Sincerely, SMUD Grid Planning & Operations*

(*Please see a copy of said email attached hereto as EXHIBIT H*).

30.    By the time his solar power system plans were approved, the system was installed and inspected by SMUD months later, the SMUD Solar Team aka SMUD

Customer Interconnection Team were well aware that Mr. Decker's house had a large solar system installed and that the purpose was to support his Bitcoin mining business that required numerous computer towers constantly drawing large amounts of power. (*Please see* <u>*Bitcoin Uses More Electricity Than Many Countries. How Is That Possible?*</u>*, The New York Times, Sept. 3, 2021, https://www.nytimes.com/interactive/2021/09/03/climate/bitcoin-carbon-footprint-electricity.html attached hereto as EXHIBIT I*).   SMUD's knowledge of Plaintiff DECKER's purpose of use was required to issue its approval of the plans. Plaintiff DECKER reasonably assumes this information conveyed to Defendant SMUD employee Jose pursuant to Jose's investigative efforts would be included in his file on record with Defendant SMUD. Moreover, it is axiomatic that a solar system cycles power depending on whether it is day or night. Plaintiff DECKER's solar system was on a 12 hour on/off cycle on and around the date of the incident.

**Interaction Between the Public Agencies.**

31.    At all times mentioned herein and upon information and belief, all Defendant agencies herein work together as part of some multi-agency joint drug task force lead by the Sacramento County Sheriff's Office and/or Defendant SHERIFF JONES. This includes Defendant SMUD regularly and proactively providing this joint drug task force or the Defendant police agencies separately with the names and addresses of homes with unusual power usages. All Defendants were operating in a joint venture partnership relationship on a regular basis in this regard.

32.    Upon information and belief Defendant SMUD employee ROBERT DUGGAN and/or other SMUD employees proactively informed the other Defendant police agencies that Plaintiff DECKER's home was cycling power usage and drawing large amounts of power.

33.     At the time that SMUD employee ROBERT DUGGAN and/or other SMUD employees provided this information, he/she/they recklessly and negligently failed to simply check Plaintiff DECKER's records within its own agency. Had those easily-accessible SMUD computer records been checked, it would have been readily apparent given Jose's investigation and the SMUD Solar Team's records that: 1) Plaintiff had a large solar power system that was responsible for the 12-hour cycling/loading associated with his address, and 2) that the multiple Bitcoin computer towers in his home were the reason for his power usage.

**Search Warrant Application**

34.     On October 22, 2020, a Judge of the Sacramento Superior Court issued a search warrant for Plaintiff DECKER's home based on a "probable cause" declaration of Defendant GEORGE PARSONS, ID #1200 that Plaintiff DECKER was operating a marijuana "grow house" inside his home in Rancho Cordova, California (*Please see a copy of said Search Warrant attached hereto as EXHIBIT J*). However, the warrant lacked probable cause to issue because the information it was base don was recklessly presented and false.

35.     Moreover, the Search Warrant itself has two different pictures of the house showing multiple solar panels in different places on the roof (*please see pages 2 and 3 of Exhibit J*) as well as, the written narrative references the solar panels specifically on page 2, paragraph 2 stating in the middle of said paragraph, "*[t]here are multiple solar panels on the roof, which are visible from the street.*"

36.     Unfortunately, the entire search warrant, and the probable cause declaration so recklessly presented to the Court upon which it was based, was a fantasy story consisting entirely of pure speculation, wrong or non-existent facts, and wild

conjecture. The warrant was therefore not based on actual probable cause in violation of the California Constitution, Article I, Section 13.

37.    Furthermore, other than receive the erroneous information from SMUD employee ROBERT DUGGAN and/or other SMUD employees, neither Defendant GEORGE PARSONS nor any of the police agencies or other Defendants did anything to investigate or verify that information or seek other avenues of confirmation before recklessly and summarily assuming Plaintiff DECKER was a drug dealer operating a "grow house" within his home. As such, the Search Warrant was obtained through procedurally improper means and was therefore void on its face at the time it was issued or alternatively voidable.

38.    Also, with the popular proliferation of home solar panel systems in recent years, particularly as promoted by Defendant SMUD itself and the electrical utility industry in general, home solar panel systems, which are easily apparent in most cases to even the casual observer, are responsible for residential cycling/load shedding of electrical power usage just as much as agricultural methods in a "grow house" and said solar panel systems should be "red flags" that immediately inform a police investigative agency to conduct a further inquiry, even if such as in this case to simply pick up the phone and call SMUD for further inquiry. This is apparent since Defendant SMUD requires advance solar system plan approval, the information is readily available and verifiable on their computers.

39.    Moreover, the field of Bitcoin mining itself has increased dramatically since 2017. In fact, "[t]he U.S. is now the number one destination for bitcoin miners …" as a result of a "428% increase from September 2020." (*Please see M. Sigalos, U.S. Officially the Top Destination for Bitcoin Miners, Beating Out China for the First Time,*

https://www.cnbc.com/2021/10/13/us-beats-china-as-the-number-one-destination-for-bitcoin-miners.html

*attached hereto as EXHIBIT K*).

40.    Moreover upon information and belief, the Defendants were on notice that Bitcoin mining requires large amounts of power and coupled with a solar system does so in a cycling fashion because they have made this mistake with other citizens of Sacramento County who were raided wrongfully due to their Bitcoin mining operations.

**Search Warrant Served on Fateful Date of Incident**

41.    On October 23, 2020 at approximately 7 am, multiple police cruisers from both Defendant police agencies arrived at Plaintiff DECKER's home to serve the Search Warrant and arrest Plaintiff DECKER and his current roommate. They did so with great fanfare using an obnoxious horn-type sound intended to wake the target and the neighborhood, and using a bullhorn called Plaintiff DECKER to walk out of his house backwards with his hands up. Claimant was roused from his rightful peace and in only his underwear forced to parade near-naked and exposed out to the street where he was handcuffed under the watchful eyes and videocameras of his new neighbors of one year.

42.    One of his now-former neighbors, Michael Growney, made a video recording of the incident and posted it on YouTube that same morning. As of the date of this writing, the 3:10 video has had nearly 500 views. The video can be accessed at this web address: https://www.youtube.com/watch?v=pr4yMiuv7ys&t=6s . The video captures other neighbors also making videos and possibly taking pictures. Moreover, someone can even be heard saying on the video at the 1:01 mark, "I figured they were doing something."

43.    Plaintiff DECKER was placed in handcuffs at the scene and forced to sit in

the back of a police cruiser in his underwear for two hours while his home was ransacked by offers effecting the search warrant. This was done without an arrest warrant or any probable cause. After tearing his house apart, damaging one of his doors, and finding nothing, only then did they ask him why he was using so much power. He explained that he had the solar panel system installed which led to the cycling/load shedding to help power the many Bitcoin computer towers which were/are responsible for the higher power draws.

44.    It is no longer the 1970s and the days of Starsky and Hutch or the boys from One Adam-12 patrolling the streets and busting grow houses "pulling too much power" are long since over. The lack of any investigation into other legitimate and plausible reasons for a home to be cycling power and/or using higher amounts of power are inexcusable and show reckless disregard for the unfortunate targets of these types of operations by all Defendants. Defendant SMUD employee DUGGAN regularly works with the Defendant police agencies in providing information about power usage at residential addresses. The accurate information about Plaintiff DECKER's home solar system was just a few keystrokes away on Defendant DUGGAN's computer. There is obviously no system in place or proper training to ensure the employees of this government actor avoid these types of reckless mistakes.

45.    The police Defendants likewise should be aware of how solar power systems cycle power similar to grow houses given the recent proliferation of residential solar systems. The notation of all the solar panels on the Plaintiff's home should have been a "red flag" causing an immediate further investigation. The explosion of Bitcoin mining likewise is another legitimate possibility for larger power draws in residences that policer officers must be aware of through knowledge and training. There is obviously no

system in place or proper training to ensure the employees of these government actors avoid these types of reckless mistakes. Never again should a police agency or officer "phone it in" a work of fiction to be presented to a Court in the Superior Court of the County of Sacramento as a probable cause declaration in support of an application for a search warrant.

46.    As it stands, all the Defendants herein have engaged in a pattern and practice of reckless conduct that has caused proximate harm to the Plaintiff, and likely to others, and if continuing will likely do so still to others in the future.

## FIRST CAUSE OF ACTION FOR FALSE ARREST
## AGAINST ALL DEFENDANTS

47.    Plaintiff incorporates by reference paragraphs 1 through 46, above.

48.    On October 23, 2020 the Defendants, and each of them, wrongfully arrested or caused or contributed through their conducted described herein to the wrongful arrest or unreasonable physical detention of Plaintiff DECKER.

49.    That the Defendant SMUD and its Defendant and other employees recklessly failed and refused to verify the information it had in it's possession about Plaintiff DECKER's home and power usage that it passed on to the other Defendants, and to Defendant PARSONS. That Defendant PARSONS and the other Defendants recklessly failed and refused to engage in even a cursory investigation or to verify the information it had in it's possession about Plaintiff DECKER's home and power usage that he/they recklessly submitted to the Sacramento Superior Court as the probable cause basis of it's search warrant application. As a result, the court ultimately approved the search warrant application on completely erroneous and therefore false information.

Had the court known the truth at the time, it would not have approved the search warrant. The search warrant was therefore void on the date of the wrongful arrest.

50.    Moreover, the Defendants had no arrest warrant or probable cause to arrest, imprison or detain Plaintiff DECKER for the two hours while they ransacked and searched his home. This constituted a false or wrongful arrest of Plaintiff Decker.

51.    The wrongful conduct of the Defendants, and each of them, was a substantial factor in causing Plaintiff DECKER's harm.

52.    As a proximate result of the wrongful conduct of the Defendants, and each of them, Plaintiff suffered and continues to suffer from serious bodily injury, financial and pecuniary losses including additional and continuing (past, present and future) property damage, medical expenses, pain and suffering, lost income, mental and emotional distress, loss of enjoyment of life, and inconvenience, all of which injuries continue to persist and will persist into the future.

53.    As a result of the wrongful conduct of the Defendants, and each of them, Plaintiff DECKER has suffered actual damages in an amount to be proven at trial. Moreover, the Defendants, and each of their conduct was and is wanton, willful and malicious and done with the intent to injure Plaintiff and to deprive Plaintiff of his rightful future income, civil rights, and property interests therein and thereby entitles Plaintiff to recovery of exemplary and punitive damages in the amount of $1,000,000.00 from each Defendant.

**SECOND CAUSE OF ACTION FOR INVASION OF PRIVACY (INTRUSION INTO PRIVATE AFFAIRS) AGAINST ALL DEFENDANTS**

54.    Plaintiff incorporates by reference paragraphs 1 through 53, above.

55.     That Plaintiff DECKER had a reasonable expectation of privacy in his home, property and person.

56.     That on October 23, 2020, the Defendants intentionally and recklessly intruded into Plaintiff's personal home and property, and interfered with his personal liberty without his permission or consent.

57.     That the wrongful intrusion of the Defendants, and each of them, would be highly offensive to a reasonable person and it was in fact highly offensive to Plaintiff DECKER.

58.     The wrongful conduct of the Defendants, and each of them, was a substantial factor in causing Plaintiff DECKER's harm.

59.     As a proximate result of the wrongful conduct of the Defendants, and each of them, Plaintiff suffered and continues to suffer from serious bodily injury, financial and pecuniary losses including additional and continuing (past, present and future) property damage, medical expenses, pain and suffering, lost income, mental and emotional distress, loss of enjoyment of life, damage to reputation, and inconvenience, all of which injuries continue to persist and will persist into the future.

60.     As a result of the wrongful conduct of the Defendants, and each of them, Plaintiff DECKER has suffered actual damages in an amount to be proven at trial. Moreover, the Defendants, and each of their conduct was and is wanton, willful and malicious and done with the intent to injure Plaintiff and to deprive Plaintiff of his rightful future income, civil rights, and property interests therein and thereby entitles Plaintiff to recovery of exemplary and punitive damages in the amount of $1,000,000.00 from each Defendant.

## THIRD CAUSE OF ACTION FOR INVASION OF PRIVACY (FALSE LIGHT) AGAINST ALL DEFENDANTS

61.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 60.

62.     That on October 23, 2020, when the Defendants intentionally and recklessly falsely arrested Plaintiff, making a public spectacle of intruding and trespassing into Plaintiff's personal home and property without his permission or consent, they publicly disclosed information or material that showed or portrayed Plaintiff DECKER in a false light.

63.     That the false light created by the public spectacle disclosure of the Defendants would be highly offensive to a reasonable person in Plaintiff DECKER's position, and in fact the Defendants' outrageous conduct was highly offensive to Plaintiff DECKER.

64.     The Defendants acted with reckless disregard for the truth and therefore knew or should have known that the public spectacle disclosure would create a false impression about Plaintiff DECKER.

65.     The wrongful conduct of the Defendants, and each of them, was a substantial factor in causing Plaintiff DECKER's harm.

66.     As a proximate result of the wrongful conduct of the Defendants, and each of them, Plaintiff suffered and continues to suffer from serious bodily injury, financial and pecuniary losses including additional and continuing (past, present and future) property damage, medical expenses, pain and suffering, lost income, mental and emotional distress, loss of enjoyment of life, damage to reputation, and inconvenience, all of which injuries continue to persist and will persist into the future.

67.     As a result of the wrongful conduct of the Defendants, and each of them, Plaintiff DECKER has suffered actual damages in an amount to be proven at trial. Moreover, the Defendants, and each of their conduct was and is wanton, willful and malicious and done with the intent to injure Plaintiff and to deprive Plaintiff of his rightful future income, civil rights, and property interests therein and thereby entitles Plaintiff to recovery of exemplary and punitive damages in the amount of $1,000,000.00 from each Defendant.

### FOURTH CAUSE OF ACTION FOR TRESPASS
### AGAINST ALL DEFENDANTS

68.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 67.

69.     That on October 23, 2020, when the Defendants intentionally and recklessly falsely arrested Plaintiff, making a public spectacle of intruding and trespassing into Plaintiff's personal home and property without his permission or consent Plaintiff DECKER owned, occupied and controlled the property in question.

70.     That the Defendants intentionally, recklessly and/or negligently entered Plaintiff DECKER's property, and caused others to also enter his property, displacing Plaintiff from his home and quiet enjoyment of same.

71.     Plaintiff DECKER did not give permission or consent for the entry.

72.     The wrongful conduct of the Defendants, and each of them, was a substantial factor in causing Plaintiff DECKER's harm.

73.     As a proximate result of the wrongful conduct of the Defendants, and each of them, Plaintiff suffered and continues to suffer from serious bodily injury, financial and pecuniary losses including additional and continuing (past, present and future) property

damage, medical expenses, pain and suffering, lost income, mental and emotional distress, loss of enjoyment of life, damage to reputation, and inconvenience, all of which injuries continue to persist and will persist into the future.

74.    As a result of the wrongful conduct of the Defendants, and each of them, Plaintiff DECKER has suffered actual damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION FOR ABUSE OF PROCESS
AGAINST ALL DEFENDANTS**

75.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 74, above.

76.    Defendants misused the court process legal procedure by:

a).    Filing the Search Warrant and Affidavit on October 22, 2020 with Superior Court of Sacramento seeking the warrant against Plaintiff, his roommate, and Plaintiff's home.

b).    Failing to minimally investigate or investigate at all while relying solely on wholly incomplete information and drawing improper and false conclusions that Plaintiff's home was "drawing power like a grow house," particularly when a few clicks of the keyboard by Defendant DUGGAR and/or other employees of Defendant SMUD would have quickly revealed the entire innocent truth about Plaintiff and his solar power system.

c).    Wholly failing to train Defendant employees and other personnel about the particulars of solar power systems, or other modern factors that might affect power consumption in a home.

d).    Recklessly presenting false facts to the Court which were the sole basis in support of the search warrant application that was granted on that illegitimate basis.

77.    That the Defendants intentionally used this legal procedure to recklessly obtain an invalid and therefore void search warrant in order to unlawfully arrest and detain Plaintiff and to search Plaintiff's home, all for what ultimately was an improper purpose.

78.    The wrongful conduct of the Defendants, and each of them, was a substantial factor in causing Plaintiff DECKER's harm.

79.    As a proximate result of the wrongful conduct of the Defendants, and each of them, Plaintiff suffered and continues to suffer from serious bodily injury, financial and pecuniary losses including additional and continuing (past, present and future) property damage, medical expenses, pain and suffering, lost income, mental and emotional distress, loss of enjoyment of life, damage to reputation, and inconvenience, all of which injuries continue to persist and will persist into the future.

80.    Plaintiff is also entitled to recover his attorney fees, costs, and expenses.

81.    As a result of the wrongful conduct of the Defendants, and each of them, Plaintiff DECKER has suffered actual damages in an amount to be proven at trial. Moreover, the Defendants, and each of their conduct was and is wanton, willful and malicious and done with the intent to injure Plaintiff and to deprive Plaintiff of his rightful future income, civil rights, and property interests therein and thereby entitles Plaintiff to recovery of exemplary and punitive damages in the amount of $1,000,000.00 from each Defendant.

**SIXTH CAUSE OF ACTION FOR VIOLATIONS OF THE TOM BANE CIVIL RIGHTS ACT AGAINST ALL DEFENDANTS**

82.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 81, above.

83.    The foregoing conduct as alleged herein violates Plaintiff's rights under the Tom Bane Civil Rights Act, the California Constitution, and the Federal Constitution.

84.    Defendants, and each of them, are individuals who were acting under color of state law in conducting the investigation (or lack thereof) and related proceedings and matters as alleged herein. Each of the individual Defendants, including DOE Defendants, inclusive, participated in, conspired with, approved of, and/or aided and abetted the conduct of the remaining Defendants.

85.    As a result of Defendants' conduct, Defendants, and each of them, by the use of threats, intimidation and coercion (or attempts to threaten, intimidate or coerce), interfered with Plaintiff's exercise and enjoyment of the rights secured by the United States Constitution and other Federal laws, the Constitution and laws of the State of California, and their rights under California Civil Code sections 51 & 52, and particularly 52.1 and 52.3.

86.    Moreover, Defendants' wrongful conduct, acts, and practices are in violation of California Civil Code §52.3 in that:

> *(a) No governmental authority, or agent of a governmental authority, or person acting on behalf of a governmental authority, shall engage in a pattern or practice of conduct by law enforcement officers that deprives any person of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States or by the Constitution or laws of California.*

87.    Such conduct includes, but is not limited to: false arrest, reckless failure to verify information in the Defendant's possession; reckless failure to properly investigate facts or investigate at all; recklessly submitting "probable cause" declarations for a search warrant application based on false facts and/or lack of evidence in preparing and presenting such documents to the court resulting in a warrant lacking probable cause, all in violation of this Plaintiff's civil rights and others', under the Fourth, Fifth, and Sixth Amendments, and the Due Process Clause of the Fourteenth Amendment of the US Constitution, as well as, the equivalent provisions of the California Constitution, Article I, Section 2 liberty, privacy and property; Article I, Section  7 due process; Article I, Section 13 prohibition of unreasonable seizures and searches, and that a warrant may not issue except on probable cause.

88.    The wrongful conduct of the Defendants, and each of them, was a substantial factor in causing Plaintiff DECKER's harm.

89.    As a proximate result of the wrongful conduct of the Defendants, and each of them, Plaintiff suffered and continues to suffer from serious bodily injury, financial and pecuniary losses including additional and continuing (past, present and future) property damage, medical expenses, pain and suffering, lost income, mental and emotional distress, loss of enjoyment of life, damage to reputation, and inconvenience, all of which injuries continue to persist and will persist into the future.

90.    The rights violated by Defendants, and each of them, are protected by California Civil Code sections 43, 49, 51, 52.1 and 52.3, which entitle Plaintiff to compensatory and punitive damages, injunctive relief, statutory civil penalties (including $25,000.00 as to each individual defendant) and attorneys' fees and costs, as provided

for by the laws and the Constitution of the State of California and pursuant to Code of

Civil Procedure §1021.5 and other applicable laws, are requested herein.

91.    As a result of the wrongful conduct of the Defendants, and each of them,

Plaintiff DECKER has suffered actual damages in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION FOR NEGLIGENCE
AGAINST ALL DEFENDANTS**

92.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1

through 91, above.

93.    The Defendants' and each of them owed a duty of reasonable care to the

Plaintiff and to the public in general.

94.    All of the aforementioned wrongful conduct of the Defendants and each of

them, was also negligent in addition to the allegations of recklessness previously

alleged, and they violated their aforementioned duty.

95.    As a proximate result of the Defendants' negligence, carelessness,

recklessness, wantonness and unlawful conduct, Plaintiff suffered and continues to

suffer from past and present financial and pecuniary losses, emotional distress, and

inconvenience, all of which injuries continue to persist and will persist in the future.

96.    The wrongful conduct of the Defendants, and each of them, was a

substantial factor in causing Plaintiff DECKER's harm.

97.    As a proximate result of the wrongful conduct of the Defendants, and each

of them, Plaintiff suffered and continues to suffer from serious bodily injury, financial and

pecuniary losses including additional and continuing (past, present and future) property

damage, medical expenses, pain and suffering, lost income, mental and emotional

distress, loss of enjoyment of life, damage to reputation, and inconvenience, all of which injuries continue to persist and will persist into the future.

## PRAYER

WHEREFORE, Plaintiff prays for relief against the Defendants, and each of them, as follows:

1.      In all Counts for General and Special Damages to be determined according to proof at the time of trial;

2.      In all Counts for costs of suit, civil penalties, attorney fees according to statute (*Code of Civil Procedure §1021.5*), *Cal. Civil Code §52*, or otherwise, and pre-judgment interest;

3.      For injunctive and declaratory relief.

4.      For exemplary and punitive damages;

5.      For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action so triable.

Respectfully Submitted,

GORMAN LAW OFFICE

Dated: April 11, 2024

_____
A. ALEXANDER GORMAN, ESQ.
Attorneys for Plaintiff
BRIAN R. DECKER

---